**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LAURA M. TAYLOR**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JIMEL PIMPTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1308-CR-676 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael S. Jensen, Magistrate
Cause No. 49G20-1003-FB-15739

**March 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jimel Pimpton appeals the revocation of his placement in community corrections. Pimpton raises two issues, which we revise and restate as whether the trial court abused its discretion in revoking his placement in a community corrections program and ordering that he serve the remaining portion of his sentence in the Department of Correction ("DOC"). We affirm.

In December 2010, Pimpton pled guilty to unlawful possession of a firearm by a serious violent felon as a class B felony, and in January 2011 the court sentenced him to eight years with six years to be served in the DOC and two years in a community corrections program.

On June 28, 2013, a Notice of Community Corrections Violation was filed alleging that Pimpton violated the conditions of approved passes on June 17, June 19, and June 20, 2013, that he habitually violated the rules of the Duvall Residential Center ("Duvall"), and that he failed to comply with his monetary obligation. The notice further provided that, with respect to the passes on June 17 and June 19, 2013, Pimpton was released from Duvall to attend group sessions with a health services provider, that he reported to the provider late and was not permitted to participate in the sessions, and that he reported late back to Duvall. With respect to the pass on June 20, 2013, the notice provided that Pimpton failed to report at all to the health services provider. The notice also stated that Pimpton had received seven conduct reports since his arrival at Duvall on April 24, 2013, that Duvall's policy dictates that a resident is deemed a habitual rule violator after receiving five conduct reports in a six-month period, that on May 28, 2013, Pimpton received a conduct report for possession or use of a controlled substance and

2

was deprived of six days of good time credit, that on May 30, 2013, he received a conduct report for violation of a conditional pass and was deprived of four days of good time credit, that on June 14, 2013, he received a conduct report for violation of a condition of a pass and was deprived of forty-six days of good time credit, that on June 24, 2013, he received a conduct report for violation of a condition of a pass, and that on June 25, 2013, he received a conduct report for possession or use of a controlled substance. Finally, the notice provided that Pimpton had not made any payments toward his financial obligation and was currently $994 in arrears.

On July 18, 2013, the court held a hearing at which Pimpton admitted the allegations that he habitually violated the rules of Duvall and that he failed to comply with his monetary obligation, and the State withdrew the other allegations. The court then informed Pimpton that he would give up certain rights by admitting to being in violation, including the right to have a hearing at which the State would have to prove that he was in violation, and Pimpton indicated that he understood and still wished to admit to the violations. The trial court then asked what it should know about Pimpton. His counsel noted that Pimpton admitted to receiving seven conduct reports and asked him what he wanted the trial court to know about any issues he was having at Duvall, and Pimpton stated that he "wasn't found guilty of all those write-ups," that he "only was found guilty of like three or four of them," that he had "a certain issue with a certain officer" which he addressed with his counselor and tried to address with "some of the higher-ups," that he filed "a grievance on like four of those writeups come from the same officer," and that he can admit that he was wrong but that he "was provoked a lot by a

3

certain officer." Transcript at 3. Pimpton also stated that the reason he had not paid any money was because Duvall required his prospective employer to complete certain tasks before Pimpton would be approved to work for the employer, that a few of the places he had attempted to obtain a job did not want to deal with Duvall, and that he did obtain a job at a barber shop but that "they had me on Door 13 so I couldn't leave to go to work until I got this over with" but that he had a job waiting for him. Id. at 5.

The State argued that Pimpton's presentence investigation report ("PSI") indicated that he has an extensive juvenile and adult criminal history, that every time he was on probation it was revoked, he is serving a sentence for his fifth felony conviction, he was on parole when he was arrested on the current case, and that he had several write-ups both in the local jail and the DOC. The State argued that Pimpton's behavior on work release was no different than it had been anywhere else, that he was no longer a good candidate for the program, and that he should spend the balance of his sentence in the DOC. Pimpton addressed the court and stated that he had only four write-ups during the time he was at the DOC and reiterated that most of the write-ups at Duvall came from one officer. The court noted that it looked at Pimpton's latest progress report and that, during the times he spent in prison, he had twenty-one write-ups, and that it is not a correctional officer's fault that he was late on a pass and brought a controlled substance into Duvall. The court found that Pimpton violated conditions of his placement in the community corrections program, revoked his placement, and ordered that he serve the remainder of his sentence in the DOC.

4

The issue is whether the court erred or abused its discretion in revoking Pimpton's placement in a community corrections program and ordering that he serve the remaining portion of his sentence in the DOC. Pimpton contends the State failed to present evidence that the rules of the Duvall Center was a condition of his community correction placement, that his placement was not conditioned on any "monetary obligation," and that the State did not prove that he failed to make such required payments. Appellant's Brief at 5. He further argues that the State did not establish that he recklessly, knowingly, or intentionally fell behind on his payments, and asserts that the "alleged violations were not serious enough to justify the imposition of a 640 day period of incarceration."[1] Id. at 6. The State notes that Pimpton admitted to two of the five allegations against him, that he was permitted to introduce mitigating evidence, he was able to give an explanation for his failure to make payments to Duvall, and that, since Pimpton admitted the allegations of his violation at the outset of the hearing, neither side produced additional evidence. The State argues that the court properly relied on Pimpton's admissions and that it was unnecessary for the court to engage further in the first inquiry of a factual finding and instead proceed to the second step of whether Pimpton's placement should be revoked. The State also maintains that the court did not abuse its discretion in ordering Pimpton to serve the remainder of his sentence, 604 days, in the DOC and noted that Pimpton had a lengthy history of disciplinary actions while incarcerated, an extensive criminal history, he never successfully completed probation, that he was completing the sentence for his fifth felony conviction as an adult, and that, in

---

[1] The State, in its appellee's brief, states that Pimpton "was given credit time for a total of 2,316 days, which left 604 days left on his sentence." Appellee's Brief at 5 (citing Transcript at 9).

5

the two months he was at Duvall, he had received seven conduct reports, at least two of which related to the use or possession of a controlled substance.

Placement in community corrections is at the sole discretion of the trial court. Toomey v. State, 887 N.E.2d 122, 124 (Ind. Ct. App. 2008) (citing Ind. Code § 35-38-2.6-3(a) (a court "may . . . order a person to be placed in a community corrections program as an alternative to commitment to the department of correction")). Ind. Code § 35-38-2.6-5 provides:

> If a person who is placed under this chapter violates the terms of the placement, the court may, after a hearing, do any of the following:
>
> (1)   Change the terms of the placement.
>
> (2)   Continue the placement.
>
> (3)   Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. Holmes v. State, 923 N.E.2d 479, 482 (Ind. Ct. App. 2010) (citing Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999), reh'g denied). A defendant is not entitled to serve a sentence in either probation or a community corrections program. Id. Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." Id. (citing Cox, 706 N.E.2d at 549 (quoting Million v. State, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995) (internal quotation omitted))). Thus our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. Id. at 483 (citing Cox, 706 N.E.2d at 551). A probation hearing

is civil in nature and the State need prove the alleged violations by only a preponderance of the evidence. Cox, 706 N.E.2d at 549. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. Id. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. Id. The violation of a single condition is sufficient to revoke probation. Wilson v. State, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

Probation revocation is a two-step process. Woods v. State, 892 N.E.2d 637, 640 (Ind. 2008). First, the court must make a factual determination that a violation of a condition of probation actually occurred. Id. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Id. When a probationer admits to the violations, the evidentiary hearing is unnecessary. Id. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. Id. However, a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation. Id.

The record shows that Pimpton admitted the allegations that he habitually violated the rules of Duvall and that he failed to comply with his monetary obligation and thus that he violated the terms of his placement in the community corrections program. The trial court gave him an opportunity to present mitigating evidence suggesting that his violations did not warrant revocation, and Pimpton presented several arguments as to

7

why he wanted the court to order that he be returned to his placement rather than serve his time in the DOC.

Based upon the record, and in light of the evidence regarding Pimpton's criminal history and conduct reports and write-ups while incarcerated and in community corrections, we conclude that the trial court did not err or abuse its discretion in revoking Pimpton's placement in community corrections and ordering him to serve the remaining portion of his sentence in the DOC.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

ROBB, J., and BARNES, J., concur.