Kevin MILLION, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 23A01–9407–CR–210.

Court of Appeals of Indiana,
First District.

Feb. 23, 1995.

Mark E. McGrady, Hillsboro, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

### OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kevin Million appeals from the trial court's revocation of his placement in a community corrections program following his plea of guilty for Nonsupport of a Dependent Child, a Class D felony. Million's placement in the program was revoked for an alleged violation of the rules governing his work release. He challenges the revocation on several grounds which we restate as the following issues:

1. Whether, at sentencing, a trial court which places a defendant in a community corrections program is required to advise the defendant of the program's work release rules.

2. Whether the trial court may revoke a defendant's placement in a community corrections program for conduct which occurs prior to the commencement of placement.

3. Whether, in order to comply with due process, a defendant is entitled to a plenary hearing before the trial court may revoke a defendant's placement in a community corrections program.

We reverse and remand.

### FACTS

Million was charged by information on December 28, 1992, with nonsupport of a dependent child and subsequently pled guilty to the charge pursuant to a plea agreement which provided in part:

the State will make no recommendation as to the sentence to be imposed on the defendant, except as follows: 36 months direct commitment to community correction [sic] program (actual 18 months), starting specific component of electronic monitor, said sentence to community correction [sic] ... consecutive to 9 months work release received in Warren Co., with one require-ment being Defendant remain current on child support payments.

Record at 14. The trial court held a sentencing hearing, accepted the plea agreement and ordered Million to serve his sentence on the nonsupport of a dependent child conviction in the Fountain County community corrections program.

Approximately one week before Million completed his sentence on work release for the prior, Warren County conviction, William Shumaker, director of the community corrections program, acted on a telephone call from a neighbor and discovered Million at his girlfriend's house during work hours. Shumaker briefly questioned Million concerning his presence at the house, and Million claimed that he had obtained permission to be there from another program administrator. Thereafter, Shumaker filed a report of Million's violation of the work release rule that he not travel anywhere but to and from work without first receiving permission from community corrections personnel. In a document called "Administrative Hearing" filed the same day, Shumaker also recommended Million's commitment to the Department of Correction on the nonsupport of a dependent child conviction. The trial court accepted Shumaker's recommendation and revoked Million's placement without a hearing.

Million challenged the revocation of his placement and asserted he was first entitled to a hearing before the trial court. The court heard argument on the issue but ruled that Million was entitled only to an administrative hearing subject to judicial review. The court then held another hearing where it considered testimony and determined that Shumaker's interrogation of Million at his girlfriend's home was a sufficient administrative hearing. Thus, the trial court again accepted Shumaker's recommendation that Million's placement in the community corrections program be revoked.

### DISCUSSION AND DECISION

#### The Community Corrections Program

The Community Corrections Program was established by the General Assembly to encourage counties to develop and

operate "a coordinated local corrections-criminal justice system" as an effective alternative to imprisonment at the state level. IND. CODE § 11–12–2–1. The program is designed for (1) the prevention of crime or delinquency; (2) persons sentenced to imprisonment in a county or local penal facility other than a state-owned or operated facility; or (3) committed offenders. IND.CODE § 11–12–1–2. A community corrections program consists of "residential and work release, electronic monitoring, day treatment, or day reporting." IND.CODE § 35–38–2.6–2. Because it is community-based and serves as an "alternative to commitment to the department of correction," placement in a community corrections program is not a commitment to the Department of Correction. IND.CODE § 35–38–2.6–3(a); *see* IND. CODE § 11–12–1–1.

### Issue One: Terms of Placement

Million's placement in the Fountain County community corrections program was ordered pursuant to I.C. § 35–38–2.6–3(a), which provides:

> The court may, at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program.... *The court may impose reasonable terms on the placement.*

(Emphasis added). If the defendant violates the terms of the placement, the court may, "after a hearing," (1) change the terms of the placement, (2) continue the placement under the original terms or (3) revoke the placement and commit the defendant to the Department of Correction for the remainder of the sentence. IND.CODE § 35–38–2.6–5.

Million argues that the trial court erred when it revoked his placement in the community corrections program for conduct which was not properly imposed as a condition of his placement. Million admitted that after sentencing and before his placement, he was orally informed of the work release rules, including the rule which he allegedly violated. Nevertheless, he reasons that he was not bound by this condition of his placement because he was not advised of it during his sentencing hearing.

Million relies on decisions in which we have interpreted the probation statutes and reversed a probation revocation because the trial court failed to advise the defendant even orally, on the record, of the specific conditions of probation. *See Atkins v. State* (1989), Ind.App., 546 N.E.2d 863, 865–66; *Disney v. State* (1982), Ind.App., 441 N.E.2d 489, 493. When a person is placed on probation, the trial court is required to "specify in the record the conditions of the probation" and to give to the defendant a written statement specifying the conditions of probation. IND.CODE §§ 35–38–2–1(a)(1) and 2.3(b)(1). The intent of those statutory requirements is "to provide a defendant with prospective notice of the standard of conduct required of him or her while on probation and to prohibit the imposition of additional conditions after sentencing." *Atkins*, 546 N.E.2d at 865. However, the holdings in *Atkins* and *Disney* are distinguishable because in those cases we were applying the express language of the probation statutes.

The community corrections statute does not require that the trial court give written notice of the terms of placement or specify those conditions on the record. It states only that the "court may impose reasonable terms on the placement." I.C. § 35–38–2.6–3(a). Nevertheless, we believe that, as in the probation revocation context, notice to the defendant of the terms of his placement in community corrections is implicit in the statute and a prerequisite to revocation of the placement.

At Million's sentencing hearing, the trial court referred to his plea agreement with the State and advised him that he would be placed in the community corrections program with "all the components" and "with the specific component of electronic monitoring, which is a form of house arrest." Record at 48. Million acknowledged that he understood the "components" of his placement. Record at 48. Sometime after sentencing and prior to his alleged violation, Million was orally advised of the program's work release rules. *See* Record at 125.

We conclude that Million was adequately advised of the terms of his placement in the community corrections program. Mil-

lion was informed at sentencing that he would be placed in the community corrections program with all components, and there is evidence in the record which established that Million was orally advised of the rules governing his participation in work release prior to his placement. He has never contended that he was not informed of the work release rules. Indeed, Million has defended his actions and insisted that he complied with the rules when he asked for and obtained permission the previous day to vary from his work schedule. The fact that Million claimed to have requested permission to deviate from the work release rules demonstrated his actual knowledge of those rules and, thus, that he was sufficiently informed of the terms of his placement.

In sum, Million received actual notice, prior to his alleged violation, that he was required to obtain permission to vary from his work release schedule. He has not shown that, on the facts of his case, he did not receive prospective notice of the standard of conduct required of him while in the community corrections program. We hold that Million's placement in the community corrections program could be revoked for a violation of the work release rules.[1]

### Issue Two: Revocation Prior to Placement

When Million pled guilty to the nonsupport of a dependent child charge in Fountain County, he had been serving a sentence for a prior conviction in Warren County. According to the terms of the plea agreement in this case, Million was required first to complete his sentence on the Warren County conviction and then to serve his sentence for the nonsupport conviction, both in work release in the Fountain County community corrections program. Million contends that because his placement had not commenced for the nonsupport conviction when he was charged with violating work release rules, the trial court had no authority to revoke his placement for that conviction. We disagree.

In *Ashba v. State* (1991), Ind.App., 570 N.E.2d 937, *affirmed* (1991), Ind., 580 N.E.2d 244, *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1767, 118 L.Ed.2d 428, this court construed the probation revocation statute and held that the trial court may revoke a defendant's probation before he enters the probationary phase of his sentence. *Id.* at 939. The defendant in *Ashba* was serving a sentence on parole to be followed by probation and, when he committed an offense while on parole, the trial court revoked the order of probation for his unlawful conduct. We affirmed the revocation and reasoned:

> Once a defendant is convicted of a criminal offense the trial court, in its discretion, may suspend a portion of the sentence and place the defendant on probation. This grant of conditional liberty is a favor, not a right. While at liberty on parole, should a defendant engage in unlawful activity, he thereby violates a condition of probation. At that point, the sentencing court has the authority to revoke probation that was previously given.

*Id.* at 940 (citations omitted).

Our conclusion in *Ashba* was based in part on language in the probation revocation statute that the trial court may revoke or terminate the probation "at any time." IND. CODE § 35–38–2–1(a); IND.CODE § 35–38–2–3(f); *see Ashba,* 570 N.E.2d at 939. Again, the community corrections statute does not contain such language. However, we do not believe that the difference between the statutes is significant in this respect.

■ In construing a statute, our objective is to determine and give effect to legislative intent. *Stanek v. State* (1992), Ind., 603 N.E.2d 152, 153. We reiterate that placement in a community corrections program is an alternative to commitment to the Department of Correction and made at the sole discretion of the trial court. *See* IND.CODE § 35–38–2.6–3(a). Therefore, a defendant is

---

1. We do not agree with Million's contention that the trial court was required to inform him of the program's work release rules at sentencing. As we have stated, there is no such requirement in the community corrections statute. However, the better practice would be for the trial court or community corrections personnel to give the defendant written notice of the community corrections rules and for the defendant to then read, sign and date the notice, all prior to or at the time of the commencement of placement.

not entitled to serve his sentence in a community corrections program but, as with probation, placement in the program is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Gilfillen v. State* (1991), Ind., 582 N.E.2d 821, 824 (probation revocation case); *Perry v. State* (1994), Ind. App., 642 N.E.2d 536, 538 (same).

There is no express language in the community corrections statute that limits the trial court's discretion to revoke placement only when a violation occurs during the period of placement. Thus, we construe the statute as permitting the trial court to revoke a defendant's placement in the community corrections program before he enters the community corrections phase of his sentence for that offense. *See Ashba*, 570 N.E.2d at 939; *cf. Johnson v. State* (1993), Ind.App., 606 N.E.2d 881, 882 (violation of terms of placement in community corrections program could serve as grounds to revoke probation before probationary phase of sentence). Such authority is inherent in the trial court's discretion both to order placement in a community corrections program and then to revoke the placement upon a violation of its terms. *See* I.C. §§ 35–38–2.6–3(a) and 35–38–2.6–5. Million has not shown that the trial court abused its discretion when it revoked his placement.

### Issue Three: Due Process

■ We last consider Million's claim that when the trial court revoked his placement in the community corrections program, it did not conduct a revocation hearing which satisfied the requirements of due process. The court determined that Million was entitled to a hearing under the statute but that an administrative hearing before community corrections program personnel would be sufficient, subject to judicial review. The court then reviewed Shumaker's decision to revoke Million's placement by holding a hearing where the court heard evidence from Million and program administrators, approved the decision to revoke placement and ordered that Million's placement be revoked.

■ The community corrections statute does not provide for an administrative hearing and judicial review of an administrative decision prior to revocation of placement in a community corrections program. Rather, it provides that "the court may, after a hearing ... revoke the placement...." IND.CODE § 35–38–2.6–5(3). We understand this language to mean that because the trial court is vested with the discretion to impose reasonable terms on placement in a community correction program, only the trial court may revoke the placement for a violation of those terms. Program personnel may not make that decision subject merely to judicial review. "In construing a statute, it is just as important to recognize what a statute does not say as it is to recognize what it does say." *Ashlin Transportation Servs., Inc. v. Indiana Unemployment Ins. Bd.* (1994), Ind. App., 637 N.E.2d 162, 168. We hold that judicial review of an administrative decision to revoke a defendant's placement in the community corrections program does not comply with the community corrections statute.

Notwithstanding this error, we must still decide, in the revocation hearing in this case, whether Million was afforded his right to due process. In the probation revocation context, our supreme court has described the defendant's due process rights as follows:

> A defendant at a probation revocation hearing is not endowed with all the same rights he possessed prior to his conviction. Formal procedural and evidentiary rules required at criminal trials are not required at probation revocation hearings. There are certain due process rights, of course, which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body. Indiana Code § 35–38–2–3[e] also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Isaac v. State* (1992), Ind., 605 N.E.2d 144, 148, *cert. denied,* —— U.S. ——, 113 S.Ct. 2373, 124 L.Ed.2d 278 (citations omitted). We likewise conclude that, at a minimum, the due process requirements expressed by our supreme court for probation revocations are

required when the trial court revokes a defendant's placement in a community corrections program. A defendant in community corrections is entitled to written notice of the claimed violation of the terms of his placement, disclosure of the evidence against him, an opportunity to be heard and present evidence and the right to confront and cross-examine adverse witnesses in a neutral hearing before the trial court.

The trial court's hearing on the revocation of Million's placement in the community corrections program was, in fact, conducted as judicial review of an administrative decision made by William Shumaker, director of the Fountain County Community Corrections Program. At Million's revocation hearing the deputy prosecutor stated, and the trial judge agreed, that the purpose of the proceeding was for the court to determine whether an administrative hearing was properly conducted. Record at 110. The court's order revoking Million's placement stated as follows:

> State appears by Mark Christoff. Defendant appears in person with counsel. Hearing had. Finding and judgment: 1) *Administrative hearing was had;* 2) There was no evidence that the hearing conducted was unfair or that the hearing officer violated the constitutional rights of the defendant; 3) There was substantial evidence that the defendant violated terms of commitment; 4) *Judgment of hearing officer* did not exceed any authority of the hearing officer.

Record at 26 (emphases added).

The record in this case indicates that the trial court deferred to an administrative decision made by community corrections personnel. Thus, in light of the procedural posture in which the court heard the evidence of his placement violation, Million did not receive a neutral hearing before the trial court. *Cf. Isaac,* 605 N.E.2d at 148. We hold that the revocation of Million's placement did not comply with due process.[2]

2. We also observe that while Million was orally advised that he had violated his work release rules, there is no evidence in the record before us that he was supplied with written notice of his non-compliance, or a petition to revoke placement, which included the grounds for his alleged

This cause is reversed and remanded for the trial court to conduct a plenary hearing on the revocation of Million's placement in the community corrections program and for other proceedings not inconsistent with this opinion.

Reversed and remanded.

RUCKER and KIRSCH, JJ., concur.

violation. *See* Record at 125. Written notice of the claimed violation of the community corrections program rules is a prerequisite to a revocation of placement that satisfies due process. *Cf. Isaac,* 605 N.E.2d at 148.