**Royal R. DAVIS, Sr., Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 02A04–9512–CR–475.

Court of Appeals of Indiana.

Aug. 2, 1996.

Transfer Denied Oct. 15, 1996.

Bruce R. Snyder, Fort Wayne, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Royal R. Davis, Sr. appeals the order committing him to the custody of the Indiana Department of Correction without further hearing. We reverse and remand.

### ISSUE

Whether Davis was entitled to an evidentiary hearing conducted by the trial court before his placement in the home detention program was revoked and he was transferred to the Indiana Department of Correction.

### FACTS

Pursuant to a plea agreement, Royal R. Davis, Sr. was convicted of operating a vehicle while intoxicated, a class D felony, and possession of marijuana, a class A misdemeanor. The trial court sentenced Davis to "three years executed" on the first count and "one year executed" on the second, with the sentences to be "consecutive to one another." (R. 92). At sentencing on April 28, 1994, the court stated it had "no objection to Mr. Davis being allowed to serve the executed portion of this sentence in either work release or home detention subject to availability and eligibility of those programs." (R. 54–55). Accordingly, the court "recommend[ed]" Davis be placed "in the work release facility/home detention" program and ordered him "release[d] upon the call of Allen County Home Detention Officer Ed Harris or Captain James Quinn, Allen County Work Release." (R. 96).

Davis was placed in the home detention program. On October 22, 1994, Davis did not return to his residence from work; further, two home detention officers observed him drive a vehicle while under the influence of alcohol and with a suspended license. The home detention program "returned [Davis] to custody" and terminated his participation in the program. A "sworn notice to terminate conditional release" which specified Davis'

violations of his home detention terms was filed with the court on October 24th by Edward Harris, Home Detention Officer. On October 27th, the court signed an order finding Davis had indeed violated the terms of his conditional release to the home detention program. The court then remanded Davis to the Indiana Department of Correction.

Davis sought a hearing on the revocation of his placement in home detention. On August 10, 1995, the court heard testimony about the Allen County home detention program and arguments by counsel as to whether the court was required to hold an evidentiary hearing to determine whether Davis had violated the conditions of home detention. On August 17, 1995, the court issued a six-page order which stated that Davis was sentenced "in accordance with the plea agreement, but subject to the discretion of the Executive Director of Allen County Community Corrections" with only a recommendation as to placement. (R. 126). The court noted that "copies of records that the Defendant had violated the conditions of home detention" were filed which the court which "facially demonstrate that [Davis'] supervising officers both observed and discussed the violations with [Davis] who admitted that he had been drinking and driving." (R. 127). Finally, the court stated it had "made no 'placement' pursuant to I.C. 35–38–2.6" and "never intended to be bound by I.C. 35–38–2.6–3." (R. 130). Therefore, the court concluded, Davis was entitled to no judicial hearing before his placement in home detention was revoked.

### DECISION

Davis claims that because I.C. 35–38–2.6–5 and *Million v. State,* 646 N.E.2d 998 (Ind.Ct. App.1995) mandate an evidentiary hearing by the court, the order finding him in violation of the terms of his placement in home detention is erroneous and must be reversed. We agree.

Our legislature has encouraged counties to "develop a coordinated local correction-criminal justice system" and "provide effective alternatives to imprisonment at the state level." I.C. 11–12–2–1. Such county corrections programs are for "[p]ersons sentenced to imprisonment in a county or local penal facility." I.C. 11–12–1–2(2). Various options for types of community programs are enumerated, including "[h]ouse arrest, home detention, and electronic monitoring programs." I.C. 11–12–1–2.5(a)(3).

The legislature has further specified certain parameters for home detention programs operated by the community corrections program of a county in I.C. 35–38–2.5–1 *et seq.,* and has authorized the court to "at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program *as an alternative* to commitment to" the Indiana Department of Correction. I.C. 35–38–2.6–3 (emphasis added). When a person who is placed in a community corrections program under I.C. 35–38–2.6

violates the terms of the placement, the court may, *after a hearing,* do any of the following:

(1) Change the terms of the placement.

(2) Continue the placement.

(3) Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

I.C. 35–38–2.6–5 (emphasis added).

■ We considered the foregoing statutory scheme in *Million, supra,* where Million claimed that subsequent to his being sentenced pursuant to I.C. 35–38–2.6–3, the trial court "did not conduct a revocation hearing which satisfied the requirements of due process." 646 N.E.2d at 1002. We noted that the community corrections program was "designed" by the legislature "for (1) the prevention of crime or delinquency; (2) persons sentenced to imprisonment in a county or local penal facility other than a state-owned or operated facility; or (3) committed offenders." *Id.* at 1000. In response to Million's specific claim, we observed that

a defendant is not entitled to serve his sentence in a community corrections program but, as with probation, placement in the program is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.' *Gilfillen v. State* (1991), Ind., 582 N.E.2d 821, 824 (probation revocation

case); *Perry v. State* (1994), Ind.App., 642 N.E.2d 536, 538 (same).

*Id.* at 1001–02. Accordingly, we found the court may revoke a defendant's placement in the community corrections program. *Id.* at 1002. However, such revocation must be preceded by a hearing before the trial court which satisfies the requirements of due process. *Id.* Those requirements, "at a minimum," include "the due process requirements expressed by our supreme court for probation revocations." *Id.* Therefore,

> [a] defendant in community corrections is entitled to written notice of the claimed violation of the terms of his placement, disclosure of the evidence against him, an opportunity to be heard and present evidence[,] and the right to confront and cross-examine adverse witnesses in a neutral hearing before the trial court.

*Id.* at 1003.

■ Despite the trial court's disavowal of any intent to sentence Davis to placement in the home detention program under Chapter 2.6 of Article 38, the sentencing order speaks for itself. The sentencing order committed Davis not to the Indiana Department of Correction, but to the county corrections program of either work release or home detention. Thus, "as an alternative to commitment" to DOC, Davis was ordered "to be placed in a community corrections program." I.C. 35–38–2.6–3. Therefore, he is entitled to an evidentiary hearing before the trial court which affords him minimal due process.

As only the legislature defines what constitutes a crime, so too does the legislature define the sentencing scheme to be followed by the courts to sanction those who violate the criminal statutes. Our legislature has articulated certain purposes to be met by counties acting to establish community corrections programs. We honor those legislative objectives by acknowledging the vested interest of the judiciary in recognizing such programs as an asset to the criminal justice system and ensuring such programs are operated credibly and fairly. The safeguard of minimal due process before revocation of a placement in a community corrections program does so.

We reverse and remand to the trial court to conduct the necessary hearing.

SULLIVAN, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. On April 28, 1994, the trial court sentenced Davis to 3 years executed for Operating a Vehicle and 1 year executed for Possession of Marijuana with the sentences to be consecutive to one another pursuant to a plea agreement. An Abstract of Judgment was prepared sentencing Davis to the Indiana Department of Correction. (R. 99). The court then went on to say that it had "no objection to Mr. Davis being allowed to serve the executed portion of this sentence in either work release or home detention subject to availability and eligibility of those programs." (R. 54–55). The Judgment of Sentence of the Court, pursuant to the plea agreement, was an executed sentence subject to the Allen County Community Corrections' acceptance of Davis for placement in work release or home detention as an alternative to the Indiana Department of Correction. On the same date, the court accepted the recommendation for placement as a conditional release and ordered "(t)he receiving authority" to return the "defendant to custody upon a violation of the conditional release." (R. 96).

I agree with the trial court judge who stated in his order of August 17, 1995, denying the defendant's Motion for Hearing on Revocation of Placement:

> Home detention officers were free to return him to custody without judicial permission. The Defendant had bargained for an executed sentence. He was not free to dictate the manner of supervision.

This case can be distinguished from *Million v. State*, 646 N.E.2d 998 (Ind.Ct.App. 1995) where the court relinquished its judicial authority. The defendant was sentenced to the custody of the receiving authority. In our case, Davis was sentenced to an executed term according to his own plea agreement. Davis was not sentenced to a community corrections program and thus the court made no "placement" pursuant to I.C. 35–38–2.6–3.

The court has merely accepted the recommendation of the Allen County Community Corrections Office to allow Davis to serve his executed sentence in detention at home. Had the Community Corrections Officer failed to accept Davis into their home detention program, Davis would have served his executed sentence at the Indiana Department of Correction. The judge, contrary to the case of *Million,* has not exercised discretion but indeed has followed the plea agreement. There is no prejudice to Davis since he has failed to follow the terms of his agreement.

I would affirm the decision of the trial court.