## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2016, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Davis, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | August 16, 2016 <br><br> Court of Appeals Case No. 49A05-1601-CR-43 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable William J. Nelson, Judge <br><br> The Honorable Shannon Logsdon, Commissioner <br><br> Trial Court Cause No. 49G18-1507-F6-23520 |

**Pyle, Judge.**

# Statement of the Case

Brian Davis ("Davis") appeals his sentence, following a bench trial, for Level 6 felony strangulation,[1] Level 6 felony criminal confinement,[2] and Class A misdemeanor battery resulting in bodily injury.[3] Davis argues that his aggregate two and one-half year sentence is inappropriate and requests this Court to review the length of his sentence and his placement at the Indiana Department of Correction. Concluding that Davis has failed to show that his sentence is inappropriate, we affirm his sentence.

We affirm.

# Issue

Whether Davis's sentence is inappropriate.

# Facts

Around 3:00 a.m. on July 5, 2015, Davis, who was on probation in two separate causes,[4] approached Carrie Grant ("Grant") near the corner of 10th Street and Emerson Avenue in Indianapolis. Davis knew Grant from a

---

[1] IND. CODE § 35-42-2-9(b).

[2] I.C. § 35-42-3-3(a).

[3] I.C. § 35-42-2-1.

[4] Davis was on probation in cause number 49G18-1004-FD-026770 from convictions for Class D felony theft and Class D felony check fraud and in cause number 49G18-1007-FC-054629 from a Class C felony forgery conviction. Based on Davis's convictions in this case, the trial court revoked his probation in those two probation causes. Davis does not appeal the revocation of his probation in those two causes.

previous encounter, and he asked her to go to a motel with him. The pair then drove separately to a Knights Inn motel near 21st Street and Shadeland Avenue.

[4] Once in their motel room, Davis and Grant smoked some crack cocaine, which Davis had brought with him. At some point, Grant went into the bathroom, began talking on the phone, and returned naked from the waist down. After Davis took "two hits" from the crack pipe, he made "a funny noise[,]" and then "grabbed [Grant] and . . . slammed [her] on the bed[.]" (Tr. 9, 10). Davis "scream[ed]" at Grant, "threw [her] back on the bed[,]" and "started beating . . . [her] head on[]to the bed[.]" (Tr. 11). They then fell to the floor, and Davis got on top of Grant, who was lying face down on her stomach. Davis grabbed Grant's neck with his arm and elbow and "kept doing it harder and harder" to the point that Grant could not breathe. (Tr. 16).

[5] When Davis lessened his grip, Grant ran to the door. As she reached for the door handle, Davis quickly ran over and grabbed Grant to stop her from exiting the room. Grant clung onto the handle in an attempt to escape while Davis tried to pull her away from the door. Grant then broke the window next to the door and screamed for help. Despite Grant's pleas for Davis to stop, he did not let her go. Instead, he told her to put her pants on and then invited her to "go do another hit[.]" (Tr. 18). Subsequently, the "door opened somehow[,]" and Grant managed to get her arm into the opening of the doorway. (Tr. 19). Davis then repeatedly slammed her arm in the door to prevent her from leaving. Eventually, Grant broke free from Davis and ran to another motel room, and the man in that room called the police. When the police officers arrived on the

scene, they found Grant bloody, bruised, and wrapped in a comforter. The officers also spoke to Davis, who had blood on his shirt.

[6] Thereafter, the State charged Davis with: Count I, Level 6 felony strangulation; Count II, Level 6 felony criminal confinement; Count III, Class A misdemeanor battery resulting in bodily injury; and Count IV, Class A misdemeanor battery. The trial court held a bench trial on December 3, 2015. Davis testified in his own defense and denied beating or strangling Grant. Davis admitted that he had tried to stop Grant from exiting the room, but he testified that he did so because he thought Grant was setting him up to be robbed and because he did not want her to leave the room without her pants. The trial court found Davis guilty as charged.

[7] The trial court held a joint hearing for Davis's sentencing and his two probation violations. During the hearing, Davis argued that the trial court should consider as a mitigator the fact that Grant "had a part in what happened" because she "participated" in smoking the crack cocaine. (Tr. 96). In regard to his sentence, Davis asked that the trial court sentence him to one year executed in community corrections and one and one-half years suspended to probation if it was going to sentence him to "a full sentence of two and a half years[.]" (Tr. 97). Davis also requested that he be placed on community corrections for his two probation violation cases.

[8] The State, highlighting that Davis was on probation in two cases when he committed the current offenses, argued that there was not "any reason for the

Court to impose anything other than the maximum sentence . . . [of] two and a half years under this case or the full back up time" for his two probation causes. (Tr. 100). In response to Davis's request to be placed on community corrections, the State argued that the trial court should not place Davis on community corrections for his probation violation cases and that, for the current offenses, it would "ask for *at least* one year executed in the Department of Correction" with the remaining time on community corrections. (Tr. 103) (emphasis added).

[9] When addressing Davis's proffered mitigating circumstance regarding Grant's alleged participation by using drugs, the trial court stated that it found it to be only "somewhat of a mitigator" and that it was "not going to put much weight on" it. (Tr. 113). The trial court acknowledged the "the things that occurred in this case, while they may have started based in the fact that you were both engaged in illegal activity, certainly were not necessitated by those illegal activities." (Tr. 113).

[10] The trial court found Davis's criminal history and the fact that he was on probation to be aggravating circumstances. The trial court noted that Davis's criminal history, which included fourteen felony convictions, eight misdemeanor convictions, and thirty arrests was the "most significant aggravator." (Tr. 114). It declined to place Davis on community corrections, noting that his criminal history was "essentially overpowering." (Tr. 120). The trial court also noted that during Davis's previous incarcerations, he had accumulated twenty-six conduct reports.

[11] Before imposing its sentence, the trial court vacated Davis's Count IV conviction and merged it with his Count III conviction. The trial court imposed an aggregate executed sentence of two and one-half (2½) years to be served in the Department of Correction. Specifically, the trial court imposed concurrent sentences of two and one-half (2½) years for Davis's Level 6 felony strangulation and Level 6 felony criminal confinement convictions and one (1) year for his Class A misdemeanor battery resulting in bodily injury conviction.[5]

## Decision

[12] Davis argues that his aggregate two and one-half year sentence for his three convictions is inappropriate. He challenges both the length of his sentence and his placement at the Department of Correction.

[13] This Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principle role of a Rule 7(B) review "should attempt to leaven the outliers, and identify some guiding principle for trial courts and those charged with improvement of the

---

[5] As for Davis's two probation violation causes, the trial court ordered Davis to serve two years of his previously four-year suspended sentence in one cause and ordered him to serve three and one-half years of his previously suspended sentence in the other cause. The trial court also ordered that Davis's aggregate two and one-half year sentence in this cause was to be served consecutively to the sentences in these two probation violation causes. *See* IND. CODE § 35-50-1-2(e)(1) (providing that "[i]f, after being arrested for one (1) crime, a person commits another crime . . . before the date the person is discharged from probation . . . the terms of imprisonment for the crimes shall be served consecutively").

sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224.

[14] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, the trial court found Davis guilty of Level 6 felony strangulation, Level 6 felony criminal confinement, and Class A misdemeanor battery causing bodily injury. The sentencing range for a Level 6 felony is between six (6) months and two and one-half (2½) years, with an advisory sentence of one (1) year. I.C. § 35-50-2-7(b). A Class A misdemeanor carries a maximum sentence of one (1) year. I.C. § 35-50-3-2.

[15] The nature of Davis's offenses involved an attack on Grant after he took her to a motel and smoked crack cocaine with her. The record reveals that Davis slammed Grant's head on the bed and squeezed her neck with his arm to the point where she could not breathe. Additionally, when Grant tried to escape from the motel room, Davis prevented her from leaving and repeatedly slammed her arm in the door. Grant, who was half-naked at the time, was eventually able to run out of the room.

[16]  Davis attempts to downplay the nature of his offenses by arguing that the "incident was the product of crack cocaine usage in which the victim willingly participated." (Davis's Br. 12). We disagree with Davis's attempt to shift the blame for his criminal offenses onto Grant. While Grant may have voluntarily used crack cocaine along with Davis, she did not voluntarily participate in Davis's acts of strangulation, confinement, and battery. Furthermore, the trial court addressed this argument at sentencing and stated that it did not find Grant's participation to be a significant mitigating circumstance. The trial court acknowledged the "the things that occurred in this case, while they may have started based in the fact that you were both engaged in illegal activity, certainly were not necessitated by those illegal activities." (Tr. 113).

[17]  As to Davis's character, the record reveals that Davis, who was fifty-five years old at the time of his offenses, has an extensive criminal history, including fourteen felony convictions, eight misdemeanor convictions, and thirty arrests. Indeed, the trial court found that his criminal history was the "most significant aggravator." (Tr. 114). Additionally, Davis committed the current offenses while on probation in two separate causes, and he has violated his probation in the past. Furthermore, as the trial court noted during sentencing, Davis had accumulated twenty-six conduct reports during his previous incarcerations. Thus, Davis's character reveals a disregard for the law and the authority of the courts.

[18]  Lastly, we address Davis's challenge to his placement at the Department of Correction. Davis contends that his aggregate two and one-half year sentence

was inappropriate because the trial court ordered that the entire sentence be served at the Department of Correction. He asserts that his placement at the Department of Correction was "unduly harsh[,]" especially where the prosecutor did not recommend that the entire sentence be served there. (Davis's Br. 14). He suggests that the trial court should have considered other sentencing options, such as community corrections.

[19] In regard to a defendant's challenge to his placement, our Indiana Supreme Court has explained that "[t]he place [where] a sentence is to be served is an appropriate focus for application of our review and revise authority." *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). Nevertheless, "it will be quite difficult for a defendant to prevail on a claim that the placement of his sentence is inappropriate." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). "This is because the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Id.* at 268 (emphasis in original). "[A] defendant is not entitled to serve his sentence in a community corrections program[.]" *Million v. State*, 646 N.E.2d 998, 1001-02 (Ind. Ct. App. 1995).

[20] Here, Davis relies on the prosecutor's statement, made during the sentencing hearing, that the State was "ask[ing] for *at least* one year executed in the Department of Correction" with the remaining time on community corrections for Davis's current offenses. (Tr. 103) (emphasis added). The prosecutor's statement, however, was made in response to Davis's argument that the trial court sentence him to one year executed in community corrections and one and

one-half years suspended to probation for his current offenses and that he be placed on community corrections for his two probation violation cases. During sentencing, the trial court declined Davis's request to be placed on community corrections, noting that his criminal history was "essentially overpowering." (Tr. 120). Davis has not shown that his placement in the Department of Correction, instead of on community corrections, is inappropriate. Davis has an extensive criminal history and committed these offenses while on probation in two other causes. Because Davis has not persuaded us that his aggregate two and one-half year sentence for his three offenses is inappropriate, we affirm the trial court's sentence.

[21] Affirmed.

Kirsch, J., and Riley, J., concur.