## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 14 2017, 10:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean C. Mullins
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jermell Dionte Moore,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

September 14, 2017

Court of Appeals Case No.
45A03-1704-CR-879

Appeal from the Lake Superior Court

The Honorable Diane Ross Boswell, Judge

Trial Court Cause No.
45G03-1507-F2-11

**Bradford, Judge.**

# Case Summary

Following Appellant-Respondent Jermell Moore's guilty plea to Level 5 felony robbery, the trial court sentenced him to two years in community corrections and one year on probation. Shortly after beginning his community corrections placement, Moore absconded. In August of 2016, the State petitioned to revoke Moore's community corrections placement for absconding. At some point, Lake County community corrections denied Moore credit time because he left the placement; Moore waived his right to a hearing in the matter and did not pursue his administrative remedies.

In March of 2017, the trial court held a hearing on the State's petition to revoke Moore's community corrections placement. At the hearing, Moore did not dispute the violation. However, when Moore's counsel asked Moore if he wanted to explain himself to the trial court, the trial court responded, "No, I don't -- I really don't want to hear it.… I really don't." The trial court found that Moore had violated the terms of his community corrections placement, revoked the placement, and ordered him to serve his three-year sentence in the Department of Correction ("DOC"). Moore contends that he was denied due process in his credit-time proceeding with Lake County community corrections and the trial court denied his right to allocution. Because we agree that the trial court denied Moore his right to allocution, we reverse and remand with instructions.

# Facts and Procedural History

[3]     On February 9, 2016, Moore pled guilty to Level 5 felony robbery pursuant to a written plea agreement. (Confid. App. Vol. II at 27-34; Tr. GP Vol. II at 1-17). The trial court sentenced Moore on April 1, 2016, to three years, with two years in community corrections and one year on probation. (Confid. App. Vol. II at 37-38, 41-42; Tr. Sent. Vol. II at 32). On August 15, 2016, the State filed a petition to expel Moore from the Lake County Community Corrections Kimbrough Work Program; the trial court held an initial hearing on November 30, 2016, and appointed counsel. (Confid. App. Vol. II at 43, 45-46).

[4]     At the March 23, 2017, revocation hearing, the parties discussed a previous administrative proceeding involving community corrections concerning the denial of credit time due to Moore's leaving the work program. (Tr. 3/23/17 Vol. II at 6-7, 12-15). In the administrative proceeding, Moore had signed a form that waived his right to have a hearing on the question of credit time. (Tr. 3-23-17 Vol. II at 15). Moore did not appeal from the decision of community corrections to revoke his earned credit time. (Tr. 3/23/17 Vol. II at 12).

[5]     After defense counsel admitted that Moore had absconded from the community corrections program for three months, the following conversation occurred:

> THE COURT: And was he unable to return?
> [MOORE'S COUNSEL]: Of course he was.
> THE COURT: Did he get injured? Was he sick? Was he --
> [MOORE'S COUNSEL]: He's a -- he was definitely able to return, Judge.
> THE COURT: He was just out partying. He was out. He thought he was free.

[MOORE'S COUNSEL]: I don't -- he wasn't -- he wasn't partying, but the explanation he gave me wasn't good enough, so --

THE COURT: Well, whatever he was doing. Okay.

[MOORE'S COUNSEL]: -- I wouldn't even give it to the Court.

THE COURT: Okay.

[MOORE'S COUNSEL]: So I -- it wasn't that he, you know, he got a child and whatever. It's nothing that --

THE COURT: Okay. Okay.

[MOORE'S COUNSEL]: So he understands --

THE COURT: It's nothing that's going to change anything.

[MOORE'S COUNSEL]: I don't think so, Judge.

THE COURT: Okay.

[MOORE'S COUNSEL]: If you want to give -- do you want to explain --

THE COURT: No, I don't -- I really don't want to hear it.

THE DEFENDANT: I mean, I understand. I understand.

THE COURT: I really don't.

[MOORE'S COUNSEL]: Okay.

March 23, 2017, Tr. pp. 17–18.

[6] The trial court found that Moore had voluntarily left community corrections and did not return until he was arrested. (Tr. 3/23/17 Vol. II at 17-18). The trial court found that Moore had violated the terms of his community corrections placement, revoked his placement, and ordered him to serve his three-year sentence in the DOC. (Confid. App. Vol. II at 50-51; Tr. 3/23/17

Vol. II at 20-22). Moore contends that the trial court abused its discretion in (1) allowing him to waive his right to a hearing in the credit-time proceeding without benefit of counsel and (2) revoking his community corrections placement without allowing a statement of allocution.

## Discussion and Decision

[7]     For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Cox v. State,* 706 N.E.2d 547, 549 (Ind. 1999). The similarities between the two dictate this approach. *Id.* Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court. *Id.* A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Id.* Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* (quoting *Million v. State,* 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995) (internal quotation omitted)).

> Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation.

*Id.* at 551 (citations omitted).

# I. Waiver of Hearing

Moore claims that his due process rights were violated because he was allegedly denied the right to counsel before waiving a hearing regarding the allegation that he had violated the terms of his community corrections placement. Our review of the record indicates no such deprivation. The transcript is clear that the hearing in question concerned *only* the decision of community corrections to deprive Moore of credit time. "A person who has been reassigned to a lower credit time class or has been deprived of earned educational credit or good time credit may appeal the decision to the commissioner of the department of correction or the sheriff." Ind. Code § 35-50-6-5.5. It is undisputed that Moore did not appeal the denial of his credit time, and the law is clear that "where [community corrections] mistakenly fails to give an offender earned credit time, the offender must exhaust administrative remedies before seeking relief from a court." *Neff v. State*, 888 N.E.2d 1249, 1252 (Ind. 2008). Even assuming, *arguendo*, that we could address the procedure by which community corrections denied Moore credit time in this proceeding (which we doubt), Moore has failed to exhaust his administrative remedies and has therefore waived any challenges to that procedure for judicial review. Whatever may have happened between Moore and Lake County community corrections, Moore has failed to establish any denial of due process rights in *this* proceeding.

# II. Allocution

Moore contends that the trial court abused its discretion in revoking his community corrections placement without allowing for a statement of allocution.

> In Indiana, the purpose of the right of allocution is to give the trial court the opportunity to consider the facts and circumstances relevant to the sentencing of the defendant in the case before it. *Dillon v. State*, 492 N.E.2d 661 (Ind. 1986); *Page v. State*, 424 N.E.2d 1021 (Ind. 1981); *Shanholt v. State*, 448 N.E.2d 308, 320 (Ind. Ct. App. 1983). "This goal [is] accomplished [where the defendant is] given the opportunity to explain [his] view of the facts and circumstances…." *Id*. As at common law, "the purpose of the judge's question, or allocution, was not to seek mitigating evidence or a plea for leniency, but rather to give the defendant a formal opportunity to show one of the strictly defined legal grounds for avoidance or delay of the sentence." *Minton v. State*, 400 N.E.2d 1177, 1180 (Ind. Ct. App. 1980).

*Ross v. State*, 676 N.E.2d 339, 343 (Ind. 1996).

In *Vicory v. State*, 802 N.E.2d 426, 429 (Ind. 2004), the Indiana Supreme Court held that a defendant in a probation revocation proceeding has the right to allocution before the trial court decides the case. It is true that the scope of the right to allocution is not as broad in a probation revocation proceeding as it is when sentence is first imposed; the *Vicory* Court held that the right to allocution in a probation revocation proceeding exists only to the extent that a defendant specifically requests to make a statement. *See id*. at 429 ("But when the situation presents itself in which the defendant specifically requests the court to make a statement, as it did here, the request should be granted."). As

mentioned, we review community corrections revocations the same as probation revocations, so *Vicory* applies in this case as it would in a probation revocation. *See Cox*, 706 N.E.2d at 549.

[11] Although Moore did not actually say the words, "I would like to make a statement," we nonetheless conclude that the trial court's actions were essentially a preemptive refusal to allow him to do so, in clear violation of the spirit of *Vicory*, if not the letter. When Moore's counsel asked Moore if he wished to explain himself, the trial court responded by saying, "No, I don't -- I really don't want to hear it.... I really don't." Tr. p. 18. We see little difference between this statement and an explicit denial of an allocution request, as the trial court was essentially telling Moore not to even bother to ask. In the end, the result is the same; Moore was not allowed to give his view on the facts and circumstances of his case. We therefore conclude that Moore's right to allocution has been violated. We reverse the trial court's revocation of Moore's community corrections placement and remand for a new hearing.

# Conclusion

We conclude that Moore failed to establish a denial of due process rights in this proceeding. We agree with Moore, however, that the trial court improperly denied him his right to allocution. We therefore reverse and remand for a new hearing on whether Moore violated the terms of his community corrections placement, at which Moore will be given the opportunity for allocution, should he desire to exercise that right.

The judgment of the trial court is reversed and we remand with instructions.

May, J, and Barnes, J., concur.