## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 28 2020, 10:41 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Otis Charles Mitchell, *Appellant-Defendant,* | February 28, 2020 |
| v. | Court of Appeals Case No. 19A-CR-1973 |
| | Appeal from the Madison Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Mark K. Dudley, Judge |
| | Trial Court Cause No. 48C06-1703-F6-627 |

**Najam, Judge.**

## Statement of the Case

Otis Charles Mitchell appeals the trial court's revocation of his probation. Mitchell raises a single issue for our review, namely, whether the trial court erroneously rejected his claim of self-defense against a correctional officer on the ground that an inmate could not claim self-defense. As Mitchell is mistaken in his understanding of why the trial court rejected his claim of self-defense, we affirm.

## Facts and Procedural History

On April 7, 2019, James Biby was working as a correctional officer at a work-release facility in Pendleton. That facility consisted in relevant part of a day room, where inmates were permitted, and a control room, where officers could monitor the inmates. The day room and the control room were separated by a locked door with a buzzer that the prisoners could use to communicate with the officers. An orange line was marked on the ground a few feet in front of the door.

That day, Mitchell crossed the orange line, approached the buzzer, and pushed the buzzer for approximately ten minutes. Several of the correctional officers directed Mitchell "to get off the buzzer and stand behind the orange line," but Mitchell refused. Tr. at 10. Officer Biby then repeated those commands, and Mitchell responded by saying "he's not f***ing moving." *Id.* Mitchell then began hitting the doors. Pushing the buzzer repeatedly is a facility rule

violation. It is also a facility rule violation "to stand in front of the orange line after being told to go behind the orange line." *Id.* at 11.

[4] In light of Mitchell's recalcitrance, Officer Biby opened the door and "repeated [the] command for [Mitchell] to step back." *Id.* at 12. Instead, Mitchell "squared up" to Officer Biby, "attempted to place his face on [Officer Biby's] face," and took an "aggressive stance." *Id.* Mitchell also "continued to yell" at Officer Biby. *Id.* Pursuant to his training, Officer Biby "attempted to grab [Mitchell's] wrist and place him in cuffs." *Id.* Mitchell "then . . . struck [Officer Biby] in the face." *Id.* After a short struggle, officers restrained Mitchell.

[5] The State filed its petition to revoke Mitchell's placement on work release. At an ensuing fact-finding hearing to the trial court, Officer Biby testified about the April 7 incident, and the State played a security video that corroborated Officer Biby's testimony. Mitchell asserted that "[t]he only thing that led to [the fight] is the officers provoked [Mitchell] into combat" and, as such, he merely acted in self-defense when he struck Officer Biby. *Id.* at 34-35.

[6] The trial court responded to the State's evidence and Mitchell's claim of self-defense as follows:

> I find the State has met its burden of proof as to [the fight allegation]. Why do I do that Mr. Mitchell? . . . [B]ased on the testimony and in the video . . . it clearly was not a preplanned ["]let's get Mr. Mitchell["] from the [officers]. It was a response to your conduct that day. . . . [I]t's very clear to me from the video that . . . you buzzed, you go away, you come back. You buzzed repeatedly. You're . . . agitated, your hand gestures. . . .

[C]learly your hand gestures indicate that you were upset about something . . . . [T]hey responded . . . and the video clearly shows that [Officer Biby] came through the door before anything other than you turning towards him. You get shoved in the chest. He goes for your arm. You strike back. *That's the problem is where you are you don't have that option. That's not available to you.* And so . . . that's why this Court has ruled the way it has.

*Id.* at 36-37 (emphasis added). The court then revoked Mitchell's placement on work release. This appeal ensued.

## Discussion and Decision

[7] Mitchell appeals the trial court's revocation of his placement on work release. As our Supreme Court has explained:

For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Brooks v. State*, 692 N.E.2d 951, 953 (Ind. Ct. App. 1998). The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court. *Million v. State*, 646 N.E.2d 998, 1001 (Ind. Ct. App. 1995). A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* at 1002 (quoting *Gilfillen v. State*, 582 N.E.2d 821, 824 (Ind. 1991)).

* * *

Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Brooks*, 692 N.E.2d at 953. A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995). We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.* (citing *Menifee v. State*, 600 N.E.2d 967, 970 (Ind. Ct. App. 1992)).

*Cox v. State*, 706 N.E.2d 547, 549, 551 (Ind. 1999) (footnotes omitted).

[8]     According to Mitchell, the trial court here erred as a matter of law when it rejected his claim of self-defense. "A valid claim of self-defense is legal justification for an otherwise criminal act." *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). A claim of self-defense generally requires the defendant to show "(1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm." *Id.*

[9]     Specifically, Mitchell asserts that the only reason the trial court rejected his claim of self-defense was the court's mistaken belief that that defense was not available to an inmate. Despite his argument that, as a matter of law, an inmate is entitled to claim self-defense against an officer, Mitchell makes no mention of Indiana Code Section 35-41-3-2, which expressly provides for claims of self-defense against correctional officers, who are public servants, in relevant part as follows:

(i) A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:

(1) protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force . . . .

(j) Notwithstanding subsection (i), a person is not justified in using force against a public servant if:

(1) the person is committing or is escaping after the commission of a crime;

(2) the person provokes action by the public servant with intent to cause bodily injury to the public servant;

(3) the person has entered into combat with the public servant or is the initial aggressor, unless the person withdraws from the encounter and communicates to the public servant the intent to do so and the public servant nevertheless continues or threatens to continue unlawful action; or

(4) the person reasonably believes the public servant is:

(A) acting lawfully; or

(B) engaged in the lawful execution of the public servant's official duties.

Ind. Code § 35-41-3-2 (2019); *see also* I.C. § 35-31.5-2-185(a)(1).

[10] We think Mitchell's failure to so much as mention an obviously relevant and potentially controlling statute is a waiver of his appellate argument. As he fails to not even mention Indiana Code Section 35-41-3-2, he certainly does not apply the facts to that statute or otherwise present any cogent argument as to how those statutory provisions may or may not apply here. Accordingly, Mitchell's appellate argument is waived for not being supported by citation to relevant authority or cogent reasoning. Ind. Appellate Rule 46(A)(8)(a).

[11] Waiver notwithstanding, Mitchell's argument hinges on the trial court's statement at the close of the fact-finding hearing that "the problem is where you are you don't have that option. That's not available to you." Tr. at 37. Mitchell interprets that statement to mean that the court concluded that he was unable to claim self-defense as a matter of law. We cannot agree with Mitchell's interpretation of the trial court's statement.

[12] The trial court's comment was within the court's assessment of the totality of the evidence. Again, the court stated as follows:

> I find the State has met its burden of proof as to [the fight allegation]. Why do I do that Mr. Mitchell? . . . [B]ased on the testimony and in the video . . . it clearly was not a preplanned ["]let's get Mr. Mitchell["] from the [officers]. It was a response to your conduct that day. . . . [I]t's very clear to me from the video that . . . you buzzed, you go away, you come back. You buzzed repeatedly. You're . . . agitated, your hand gestures. . . . [C]learly your hand gestures indicate that you were upset about something . . . . [T]hey responded . . . and the video clearly shows that [Officer Biby] came through the door before anything other than you turning towards him. You get shoved in the

chest. He goes for your arm. You strike back. *That's the problem is where you are you don't have that option. That's not available to you.* And so . . . that's why this Court has ruled the way it has.

*Id.* at 36-37 (emphasis added).

[13] Although the italicized language above could have been more clear, we conclude that the totality of the court's commentary reflects its position that the *evidence* did not support Mitchell's claim of self-defense *as a matter of fact*, not that Mitchell could not raise such a defense as a matter of law. But Mitchell makes no argument on appeal as to whether the court erred in its assessment of the evidence against him. Thus, Mitchell has not met his burden on appeal to demonstrate reversible error. App. R. 46(A)(8)(a).

[14] That said, Officer Biby's testimony, which was corroborated by the security video, supports the trial court's conclusion that the facts were not with Mitchell on his self-defense claim. The evidence shows Mitchell was over the orange line—a place he was not permitted to be after the officers told him to step back; Mitchell provoked the action or was the initial aggressor; and Officer Biby's actions were lawful and in the execution of his official duties. Accordingly, we affirm the trial court's revocation of Mitchell's placement on work release.

[15] Affirmed.

Vaidik, J., and Tavitas, J., concur.