**Trenton PATTERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0012–PC–798.

Court of Appeals of Indiana.

July 3, 2001.

---

Jane G. Cotton, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Martha Warren–Rosenfeld, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Trenton Patterson ("Patterson") appeals the trial court's order revoking his placement at the Work Release Center.

We affirm.

### ISSUE

Whether Patterson was entitled to notice of the work release rules as a condition of his placement in the Work Release Center.

### FACTS

On October 10, 1994, Patterson pleaded guilty to battery as a class C felony and theft as a class D felony. For the battery conviction, the trial court sentenced Patterson to eight years imprisonment with one year executed. For the theft conviction, Patterson received an 18–month sentence also with one year executed. Both sentences were to be served concurrently with the first six months served in the Madison County jail and the remainder on home detention. Patterson was to be placed on probation and monitored by the Probation Department for the remaining seven years. On December 12, 1994, Patterson signed a probation order that specifically outlined the conditions of his probation.

On October 2, 1995, the probation department filed a notice of probation violation alleging that Patterson violated his probation by providing "a urine specimen which tested positive for marijuana...." (R. 40). Patterson admitted to using marijuana, and the trial court partially revoked his probation by ordering that six months of the suspended sentence be executed if he did not successfully complete the drug and alcohol treatment program in which he was currently enrolled. The order noted that "[a]ll other terms and conditions of probation previously imposed remain in full force and effect." (R. 42). Patterson signed a modified probation order on January 9, 1996 that outlined the conditions of his probation, including the newly added drug and alcohol treatment condition.

On August 5, 1996, another notice of probation violation was filed alleging Patterson's failure to pay various fees. However, that notice was dismissed.

On December 7, 1999, a third notice of probation violation was filed. It alleged that Patterson had failed to keep the probation department informed of his address, report to probation, complete anger control treatment, and maintain part-time employment. On February 7, 2000, the trial court found that Patterson had violated his probation and ordered that 24 months of the suspended sentence be executed. However, the trial court indicated that in lieu of going to prison, the executed sentence was stayed to allow Patterson "the privilege of serving ... at the Work Release Center, subject to their rules and regulations." (R. 84). The trial court further ordered that if Patterson was "denied admission or removed from the program for any reason, the stay [would] be lifted and [he would be] transferred to the custody of the Indiana Department of Corrections." (R. 46).

On August 2, 2000, the Work Release Center filed a petition with the trial court to terminate Patterson's work release. The petition alleged that between June 27 and July 21, 2000, Patterson had been at unauthorized locations, had been observed gambling at the Work Release Center, and had asked employers to lie about his whereabouts.

On August 11, 2000, an initial hearing was held. At that time, Patterson was advised of and given a copy of the petition

to terminate his work release placement. The trial court told Patterson that he could be sent to the Department of Correction "for the period of time previously sentenced" if he was found to have violated the terms of his placement; Patterson said he understood. (R. 66). In addition, Patterson was appointed counsel and the trial court set the revocation hearing for August 28, 2000. No additional pleadings were filed before the revocation hearing.

At the revocation hearing, Rick Kyle ("Kyle"), the work release security supervisor, testified that on July 27, 2000 he spoke to Patterson "regarding his blatant disregard of rules and regulations" and told Patterson that "he was to adhere to all rules and that this would be the last warning." (R. 89). Kyle also testified that at 1:00 p.m. on July 31, 2000, he observed Patterson behind Bickel's bicycle shop. Kyle stated that when he later asked Patterson where he was at 1:00 p.m., Patterson said "that he was at the UAW office seeking a job." (R. 90).

At the conclusion of the hearing, the trial court found that Patterson had violated the conditions of his placement. The trial court ordered a total of four years of the suspended sentence executed at the Department of Correction with the remainder to be served on probation.

### DECISION

Patterson appeals the trial court's revocation of his placement. Patterson argues on appeal that there is "nothing in the record to show that [he] knew the [Work Release Center] rules at the times he allegedly violated them." Patterson's Brief at 10. Additionally, he argues that the trial court's advisement "that the defendant must follow the rules of the jail or community corrections program, alone, is insufficient because the advisement does not specifically identify that the rules are a condition of [placement] [1]." (R. 58). Lastly, Patterson argues that his due process rights were violated because it was not made clear to him that he could serve additional time with the Department of Correction for violating the Work Release Center rules.

■ Placement in a work release program is "an alternative to commitment to the department of correction." Ind.Code § 35–38–2.6–3(a). Placement in a work release program is not an entitlement, "but, as with probation, placement in the program is a matter of grace and a conditional liberty that is a favor, not a right." *Pavey v. State*, 710 N.E.2d 219, 221 (Ind. Ct.App.1999). When a court orders placement in a work release program, reasonable terms may be imposed, and, when placement is completed, the person must be returned to probation. Ind.Code §§ 35–38–2.6–3; 35–38–2.6–7.

■ If a person violates the terms of his placement, the trial court may, after a hearing, revoke his placement and commit him to the Department of Correction. Ind.Code § 35–38–2.6–5. However, prior to revocation, a defendant is "'entitled to written notice of the claimed violation of the terms of his placement, disclosure of the evidence against him, an opportunity to be heard and present evidence[,] and the right to confront and cross-examine adverse witnesses....'" *Davis v. State*, 669 N.E.2d 1005, 1008 (Ind.Ct.App.1996) (quoting *Million v. State*, 646 N.E.2d 998, 1003 (Ind.Ct.App.1995)).

---

1. Sua sponte, the trial court noted that the probation department did not file a notice of probation revocation along with the petition to terminate Patterson's work release. However, we find that this was not necessary because Patterson was not on probation while he was in the Work Release Center.

A hearing to terminate a person's work release is civil in nature, and in order to revoke Patterson's placement, "the State need only prove that the revocation was warranted by a preponderance of the evidence." *Decker v. State,* 704 N.E.2d 1101, 1104 (Ind.Ct.App.1999). As a result, "we will affirm the revocation of placement in a community corrections program if, considering only the probative evidence and reasonable inferences therefrom, there is sufficient evidence supporting the conclusion that the individual within the program is guilty of violating *any* condition of the program." *Pavey,* 710 N.E.2d at 221 (emphasis added).

Concerning the Work Release Center rules, Patterson argues on appeal that the trial court's advisement that he successfully complete work release "subject to their rules and regulations" was inadequate because it did not inform him of the specific rules and regulations of work release. (R. 84). However, we disagree.

Indeed, we have held that "notice to the defendant of the terms of his placement in [work release] is implicit in the statute and a prerequisite to revocation of the placement." *Million,* 646 N.E.2d at 1000. In that case, the trial court placed Million in a work release program pursuant to a plea agreement. Sometime after the sentencing hearing, Million was orally advised of the work release program rules. When the work release program supervisor discovered that Million had been at his girlfriend's house during work hours, a petition to terminate work release was filed with the trial court. Million claimed he had asked for permission from another work release supervisor, but the trial court subsequently revoked his work release placement.

On appeal, Million argued that the trial court erred because he was not advised of the rules during his sentencing hearing. While we held that the trial court was not bound to advise Million of the specific work release rules, we found that he was entitled to notice of the rules. However, we also held that Million had received notice because he was orally advised of the rules. Further, we noted that there was additional evidence of his actual knowledge of the rules. For example, Million "never contended that he was not informed of the work release rules." *Id.* at 1001. Further, he "defended his actions and insisted that he complied with the rules when he asked for and obtained permission the previous day to vary from his work schedule. The fact that Million claimed to have requested permission to deviate from the work release rules demonstrated his actual knowledge of those rules and, thus, that he was sufficiently informed of the terms of his placement." *Id.*

In the case at bar, we find that on appeal Patterson attempts to raise a separate and distinct issue that was never raised or argued in the trial court. Patterson argues that the trial court committed reversible error because prior to placement it failed to advise him of all the rules of work release. Patterson never raised or argued to the trial court that he was without knowledge or had never been informed of the specific work release rules he was accused of violating. As a result, failure to make a timely objection and specifically note the basis for the objection amounts to waiver. *Moore v. State,* 723 N.E.2d 442 (Ind.Ct.App.2000).

Waiver notwithstanding, we choose to address Patterson's argument. First, during the evidentiary hearing, Patterson never argued that he had no prior knowledge of the Work Release Center rules or the specific rules that he was accused of violating. He merely argued that (1) the trial court did not advise him of every rule at the Work Release Center prior to his

placement; and (2) that the State did not introduce a signed copy of the rules as evidence that he was told what the Work Release Center's rules were.

On the other hand, just as in *Million*, Patterson vigorously defended his actions during the evidentiary hearing by claiming he was not in violation of the rules. For example, one of the reasons the trial court revoked Patterson's placement was that he "was in various locations doing things unrelated to work release." (R. 61). The record shows that Kyle testified that at 1:00 p.m. on July 31, 2000, he observed Patterson behind Bickel's bicycle shop giving a handful of money to a man and then placing a bicycle in the trunk of a car. Later, when Kyle asked Patterson where he was at 1:00 p.m., Patterson stated that he was at the UAW office trying to get a job.

However, at the revocation hearing, Patterson defended against this allegation by testifying that he was at Bickel's trying to get a job when a man asked him if he wanted to buy a bike for $10. Patterson testified, "So, I gave him $10, I put the bicycle in my trunk, and I continued on my job search pass. It wasn't like I stopped at Bickel's just to buy a bicycle while I was out on my job search pass." (R. 135).

When asked to explain the gambling allegation to the trial court, Patterson testified, "We [were] playing cards on my bed and I think there was like maybe $4 in change that was laying on the bed from ... the change machine." (R. 136). Patterson further claimed that the guard walked by, but did not say anything about the money at the time.

When Patterson was asked to respond to the allegation that he had asked an employer to lie about his whereabouts, he denied that he had lied. Patterson testified that he only asked his employer to call

the Work Release Center to inform them he had been at work until 3:00 p.m.

When Patterson was asked to respond to allegations that he "failed to provide written verification" of his employment on July 10–12, 2000, he testified that he was "on lock down at the Work Release Center" and could not turn the verification in on time. (R. 141).

Lastly, Patterson was asked to respond to an allegation that he was absent from work on June 27, 2000. He testified that he was running errands for a subsequent employer when the Work Release Center called to verify his attendance. He stated that his employer's youngest son answered the phone. Patterson further testified that when he returned, the son "told me somebody called and asked if I worked there and he told them I didn't." (R. 142). Patterson then testified that he called the Work Release Center, informed them of the situation, was told it was "no big deal," and had his employer sign a form to that effect. (R. 142). Although represented by counsel, Patterson neither introduced this form into evidence nor called any witnesses on his behalf.

Because Patterson never contended to the trial court that he did not know the rules and regulations of the Work Release Center but defended his actions and behavior by claiming that he was not in violation of the rules, we find that Patterson's due process rights were not violated. The Work Release Center had filed a petition to terminate Patterson's placement on work release on August 2, 2000; attached was an affidavit outlining the specific allegations of work release rule violations. Patterson was also informed of the alleged violations at an initial hearing on August 11, 2000. He was then appointed counsel and stated to the trial court that he understood the nature of the alleged violations. Further, the record shows that Patterson

responded to and defended against each allegation during the revocation hearing on August 28, 2000. (R. 134–142). In addition, it defies common sense to say that Patterson did not know that gambling (which is illegal), being in unauthorized locations, and asking employers to lie would not be violations of the Work Release Center rules. While the better practice would have been for the State to introduce direct evidence that Patterson had been advised of the rules, we find that, considering the evidence and reasonable inferences, there is sufficient evidence of probative value to conclude that Patterson was aware that his actions and behavior were in violation of the Work Release Center rules.

Patterson's final argument is that his due process rights were violated because he was not aware that he could serve additional time with the Department of Correction for violating the Work Release Center rules. We find this argument unpersuasive. It is clear that when a person is found to have violated the terms of their placement, the trial court may revoke placement "and commit the person to the Department of Correction for the remainder of the person's sentence." I.C. § 35–38–2.6–5(3). Further, during his initial hearing on August 11, 2000, Patterson stated that he understood he could be ordered to serve the remainder of his sentence if he was found to have violated the terms of his placement. As a result, we find no error.

Affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in result.