


FILED

Feb 12 2026, 4:03 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-CR-43

## Lamenski Ewing,
*Appellant/Defendant,*

–v–

## State of Indiana,
*Appellee/Plaintiff.*

---

Argued: September 25, 2025 | Decided: February 12, 2026

Appeal from the Vanderburgh Circuit Court
No. 82C01-2204-F3-1994
The Honorable Celia Pauli, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-1721

---

**Opinion by Justice Molter**

Chief Justice Rush and Justice Goff concur.
Justice Slaughter dissents with separate opinion in which Justice Massa joins.

**Molter, Justice.**

Lamenski Ewing appeals his probation revocation. He argues the community corrections case manager's petition to revoke his *work release* did not notify him that the prosecutor was also seeking to revoke his subsequent *probation* too. We agree, so we grant transfer and reverse his probation revocation.

# Facts and Procedural History

Ewing pleaded guilty to criminal confinement (Level 3 felony) and interfering with reporting a crime (Class A misdemeanor). As a result, the trial court sentenced him to an aggregate five-year term: two years through time already served and work release, then three years of probation. Ewing's plea agreement said that if he violated the rules of any "Court-sponsored program"—work release in this case—the violation "will result in revocation of the Defendant's placement on the Court-sponsored program and execution of the Defendant's sentence." App. Vol. 2 at 40.

In August 2023, Ewing failed to return to the work release facility. So, three days after he was supposed to return, his community corrections case manager filed a Petition and Affidavit of Probable Cause for Revocation of Vanderburgh County Therapeutic Work Release Program. The petition requested that the court revoke Ewing's work release because he was "AWOL" in violation of the program's rules. *Id.* at 74. Critical here, it said nothing about revoking his probation and did not request that the court revoke the suspended portion of his sentence.

Several months later, Ewing was arrested and charged with the failure to return to lawful detention (Level 6 felony) based on his failure to return to the work release facility. He pleaded guilty, and the trial court sentenced him to a year in the Department of Correction. At that sentencing hearing, the judge also addressed the community corrections petition to revoke work release. Ewing admitted to violating the terms of his work release, and the State then asked the court to revoke not only his work release privileges but also his probation. Ewing's attorney objected,

arguing that revoking his probation would violate his due process rights because the only petition before the court was a petition to revoke work release. There was no petition to revoke probation.

The trial court disagreed. It explained that probation can be revoked even before it begins, and it would be illogical to put Ewing on probation after his noncompliance with work release, which is a more restrictive program than probation. The trial court therefore granted both requests—the case manager's written request to revoke Ewing's work release privileges and the prosecutor's oral request to revoke his probation—and the court ordered the remainder of Ewing's sentence executed in the Department of Correction.

Ewing appealed, arguing (1) the trial court did not have the statutory authority to revoke his probation because the State had not filed a petition to revoke probation, and (2) the trial court violated his due process rights under the Fourteenth Amendment by revoking his probation without giving him adequate notice. In a unanimous, published opinion, the Court of Appeals affirmed, finding no error. *Ewing v. State*, 252 N.E.3d 449 (Ind. Ct. App. 2025).

Addressing Ewing's first argument, the Court of Appeals held that the trial court had the authority to revoke Ewing's probation under Indiana Code section 35-38-2.6-5(a)(4). *Id.* at 455. That statute authorizes the court to revoke placement in a community corrections program and to commit the defendant to the county jail or Department of Correction when the defendant violates the terms of the placement.

Addressing Ewing's second argument, the Court of Appeals held there was no due process violation. It reasoned that the case manager's petition to revoke work release gave Ewing notice that his probation could be revoked too. This was so, the court said, because Ewing agreed in his plea agreement that violating the work release program's rules would result in the execution of his sentence. *Id.* at 454. The trial court also reminded him of that fact during his plea hearing on the failure to return charge. *Id.* Even setting all that aside, the Court of Appeals concluded it isn't necessary to advise a defendant that committing a new crime could result in probation

revocation because that condition of probation is automatically included by operation of law. *Id.*

Ewing then petitioned for transfer, which we now grant, thus vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

## Standard of Review

We review probation revocations for an abuse of discretion, *Woods v. State*, 892 N.E.2d 637, 639 (Ind. 2008), and one way a trial court exceeds its discretion is by misinterpreting the law, *Mitchell v. 10th & The Bypass, LLC*, 3 N.E.3d 967, 970 (Ind. 2014). Whether the notice to a defendant that the State seeks to revoke probation satisfies due process is a legal question we consider de novo. *Russell v. State*, 234 N.E.3d 829, 857 (Ind. 2024).

## Discussion and Decision

We grant transfer to answer this question: Does a petition to revoke work release provide adequate notice that the State also seeks to revoke probation for the subsequent suspended portion of the sentence when the petition mentions neither probation nor the suspended portion of the sentence? Ewing argues the answer is no, and the State argues the answer is yes. We agree with Ewing, and our analysis proceeds in two steps. First, we explain that a prosecutor cannot seek a sanction for violating the rules of work release or probation that is different than the sanction sought in the revocation petition(s) that is (are) the subject of a final revocation hearing. And second, we explain that the probation revocation here went beyond the work release revocation identified in the petition.

## I. Due process precludes the State from seeking a sanction that deviates from the sanction(s) requested in the revocation petition(s).

The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deprive any person of life, liberty, or property, without due

process of law." U.S. Const. amend. XIV, § 1. Due process "requires reasonable notice and a meaningful opportunity to be heard." *Rotert v. Stiles*, 174 N.E.3d 1067, 1070 (Ind. 2021).

Ewing argues his due process right to notice was violated because the State sought a different sanction (probation revocation) than the one the community corrections case manager identified in the revocation petition (work release revocation). There was never any petition to revoke Ewing's probation, the State concedes, but it argues that doesn't matter. What matters from the State's perspective is that the law and Ewing's plea agreement were enough to alert him that probation revocation was a legally authorized sanction for breaking the work release rules.

Before evaluating the notice Ewing received, we first outline the contours of his due process right to notice in the probation revocation context. In particular, we explain that due process protections apply to revocation proceedings, and that means a prosecutor cannot seek a sanction that deviates from the sanction in the revocation petition(s) the court considers at the final hearing.

## A.   Due process applies to revocation proceedings.

Both work release and probation are alternatives to incarceration through the Department of Correction. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). Each is a "matter of grace," a "conditional liberty that is a favor, not a right." *Id.* (quotations omitted). Liberty is conditioned on complying with the rules of the work release program and the court. And if a program participant or probationer breaks those rules, the court may remove them from the program and/or order that their previously suspended sentence be executed instead. Ind. Code § 35-38-2.6-5(a)–(b) (work release); I.C. § 35-38-2-3(h)(3) (probation).

Before a court revokes work release or probation, though, it must provide due process. *Cox*, 706 N.E.2d at 549. Due process in this context is flexible. It allows "courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety, sometimes within limited time periods." *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007). So

neither a petition to revoke work release nor a petition to revoke probation triggers the "full array of constitutional rights afforded defendants at trial." *Cox*, 706 N.E.2d at 549.

Still, due process imposes procedural and substantive limits for revocation proceedings. *Id.* Those limits require:

> (a) written notice of the claimed violations of [work release or] probation; (b) disclosure to the [program participant or] probationer of the evidence against him or her; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking [work release or] probation.

*Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011).

This case turns on the notice requirement.

## B. Due process limits the sanctions a prosecutor can seek to those identified in the revocation petition(s) subject to the final hearing.

Notice must be sufficiently detailed and timely to provide a reasonable opportunity to prepare a defense. *See, e.g.*, *Bovie v. State*, 760 N.E.2d 1195, 1999 (Ind. Ct. App. 2002) (explaining that notice must be "sufficiently

detailed to allow the probationer to prepare an adequate defense").[1] That means, in part, the State cannot seek revocation based on alleged facts or violations that are different from those alleged in the revocation petition. *See, e.g.*, *Long v. State*, 717 N.E.2d 1238, 1240 (Ind. Ct. App. 1999) (explaining that "probation may not be revoked based upon proof of an act that is merely similar in nature to the violation charged in the written notice"); *Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997) (concluding that the court could not base its revocation of probation on the probationer's failure to take a test because that was not a basis "set out in the State's petition for revocation").

A related question arises here. Although the State can't deviate from the petition's factual allegations, can the State seek a sanction (probation revocation) that deviates from the one the petition identifies (work release revocation)? We conclude due process doesn't permit either deviation for the same reason: both thwart the ability to prepare a defense.

Revocation proceeds in two steps. First, the court decides whether there was a violation of the terms of the program or probation. *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997). Second, if there was a violation, then the court decides the consequence. *Id.* Just as changing the alleged violations or factual basis at the first step thwarts the defense preparation, so too does changing the requested sanction at the second step.

One reason is that it is common to admit alleged violations, as Ewing did here. When someone violates the terms of probation, a variety of results may follow. The court may "[c]ontinue the person on probation, with or without modifying or enlarging the conditions." I.C. § 35-38-2-

---

[1] *See also United States v. Davila*, 573 F.2d 986, 987–88 (7th Cir. 1978) (reversing a probation revocation because "it was not until the final hearing itself that Davila received any written petition, motion or rule which specified the grounds on which the Government sought to revoke his probation"); *see generally* Wayne R. LaFave et al., 6 Criminal Procedure § 26.10(b) (2024); Neil P. Cohen, Law of Probation & Parole § 23:32 (2025) ("What is needed is sufficient notice . . . to permit the alleged violator to offer any reasonably available defense to the charges.").

3(h)(1). The court may extend the probationary period for up to an additional year. I.C. § 35-38-2-3(h)(2). Or the court may "[o]rder execution of all or part of the sentence that was suspended at the time of initial sentencing." I.C. § 35-38-2-3(h)(3). There is a similar menu for violating the terms of placement in a community corrections program. The community corrections director may "[c]hange the terms of the placement," "[c]ontinue the placement," "[r]eassign a person assigned to a specific community corrections program to a different community corrections program," or "[r]equest that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence." I.C. § 35-38-2.6-5(a)(1)–(4).

Whatever the alleged violation, when deciding whether to admit the allegation, how extensive a defense to mount, or which alternatives to incarceration to propose, the accused should be able to rely on the sanction the revocation petition identifies absent notice that the court may impose a different sanction. In other words, the program participant or probationer should be able to infer from the request for a particular sanction that community corrections or the prosecutor will not seek different or additional sanctions at the final hearing. *See State v. Home Brewing Co. of Indianapolis*, 105 N.E. 909, 916 (Ind. 1914) (describing the "old maxim of the law" that the "express mention of one person or thing is the exclusion of another" (quotations omitted)).

We anticipated this due process limitation in *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995). In that case, Braxton had a fifteen-year sentence with one year suspended to home detention and thirteen years suspended to probation. *Id.* at 269. After she violated the home detention conditions by tampering with her monitoring device, the trial court revoked all of her suspended sentence—home detention and probation—and ordered that she serve the remainder in the Department of Correction. *Id.*

The notice that the State was seeking to revoke home detention did not mention probation. But our Court concluded that Braxton had adequate notice that probation could be revoked too because the trial court warned her at her initial hearing for the revocation proceedings that the court

might reimpose the entirety of the suspended sentence if the allegations were proven. *Id.* at 270. Critically, we said things might have been different if Braxton had not had actual notice that the State was seeking to revoke her probation in addition to revoking home detention. *Id.* ("Had . . . Braxton had no actual notice that it was revocation of her probation that the State was seeking, we might very well have concluded along with the Court of Appeals that Braxton did not receive the notice to which due process entitled her.").

The cases the State cites illustrate the same point. In *McCauley v. State*, the Court of Appeals held there was no due process violation because "[t]he State's notice of violation specifically asked the trial court to revoke both home detention and probation." 22 N.E.3d 743, 748 (Ind. Ct. App. 2014), *trans. denied*. In *Wright v. State*, there was no due process violation because "[w]hile not specifically including the word 'probation,' the written notices of violation were seeking to have Wright's community-corrections and probation placements revoked as the State requested that 'all' of the sentence be imposed." No. 24A-CR-1, at *3 (Ind. Ct. App. June 11, 2024) (mem.); *see also Christie v. State*, 939 N.E.2d 691, 694 (Ind. Ct. App. 2011) (holding that notice was adequate because "revocation of Christie's suspended sentence necessarily entailed revocation of his community corrections placement, and the State's explicit notice of the former implied notice of the latter"). Similarly, in *Patterson v. State*, Patterson confirmed at his initial hearing on a petition to revoke his work release that "he understood he could be ordered to serve the remainder of his sentence if he was found to have violated the terms of his placement." 750 N.E.2d 879, 885 (Ind. Ct. App. 2001). In all these cases, the Court of Appeals concluded notice was adequate because the probationer was alerted through either the petition or the initial hearing that the trial court was considering whether to revoke their probation.

Consistent with these cases, we hold the State cannot seek sanctions beyond those identified in a revocation petition unless the defendant has actual notice that the State is seeking those sanctions. And we conclude the State did not provide that notice here, which we discuss next.

## II.  The State did not give Ewing notice that it was seeking to revoke his probation.

The petition to revoke Ewing's work release was straightforward. Titled "Petition and Affidavit of Probable Cause for Revocation of Vanderburgh County Therapeutic Work Release Program," it alleged that Ewing violated the work release rules by failing to return to the facility. App. Vol. 2 at 74. And it asked the court to revoke Ewing's work release as a result. The petition never mentioned probation, never mentioned the portion of Ewing's sentence suspended to probation, and never sought any relief related to probation.

What we imagined in *Braxton* is precisely what happened here. Ewing had notice that his community corrections case manager was seeking to revoke his work release, but he had no notice, until after he admitted the violation, that the prosecutor was also seeking to revoke his probation. Because the case manager and prosecutor had identified only work release revocation as the requested sanction, Ewing could reasonably infer they were not seeking any other sanction.

The State disagrees, arguing Ewing had ample notice that it was seeking to revoke his probation. But each of the State's arguments fails.

### A.  The State cannot rely solely on Ewing's knowledge of what sanctions the law permits.

First, the State says Ewing had notice that the Indiana Code authorized the judge to revoke both work release and probation because Ewing violated the work release terms. For that point, the State cites Indiana Code section 35-38-2.6-5(a)(4), which permits a trial court to "revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence" when a person violates the terms of placement. Also, trial courts "may revoke the probation" of a person "[i]f the person commits an additional crime," as Ewing admitted he did when he absconded. I.C. 35-38-2-1(b); *Luke v. State*, 51 N.E.3d 401, 421 (Ind. Ct. App. 2016) ("The requirement that a probationer obey federal, state, and local laws is automatically a condition

of probation by operation of law."), *trans. denied*. And Ewing initialed a paragraph in his plea agreement that informed him that a violation of a court-sponsored program would result in the execution of his sentence.

The State's argument, echoed in the dissenting opinion, conflates notice of what the law permits with notice of what the State requests. As we explained in the previous section, due process requires more than just the defendant's actual or constructive knowledge of what the law or a prior agreement permits; the defendant must be informed what sanctions the State actually seeks, or at least what sanctions the court is considering if they may be different than what is sought in the petition. That is the lesson of *Braxton*, *McCauley*, *Wright*, and *Patterson*. In each of those cases, either the State mentioned in its petition that it was seeking probation revocation, or the trial court warned the probationer at the initial hearing that the court was contemplating revocation as a sanction. Neither happened here.

The dissenting opinion also emphasizes the plea agreement's statement that a violation of work release rules "will result" in an executed sentence, *post*, at 2, but that provision isn't self-enforcing. The State must petition the court to enforce it, and there is no dispute that the petition must comply with due process. That due process requirement precludes the State from misleading Ewing by telling him it is petitioning for one sanction (work release revocation) when it is really seeking much more (subsequent probation revocation). While the dissenting opinion says we're wrong about that, it doesn't cite any cases condoning this sort of misdirection.

### B. None of the hearings after Ewing's work release violation adequately advised him that the violation might result in probation revocation.

Next, the State argues the trial court warned Ewing that because the State alleged he violated work release conditions, he also faced the possibility of probation revocation. For this warning, the State points to Ewing's initial hearing on his new criminal charge for failure to return.

There the judge told Ewing that if the judge granted the case manager's petition, the judge "could order that [his] sentence . . . be revoked and [he] serve that sentence in the county jail or the department of correction." Tr. at 5. But when the judge asked whether Ewing understood, he responded that he did not hear what the judge said. *Id.* at 5–6. The judge tried again, warning that "Work Release filed a petition to revoke your sentence there and if the Court revokes that sentence, you could serve that sentence in jail or prison." *Id.* at 6. But when Ewing asked—"What sentence?"—the judge responded by simply appointing counsel to represent Ewing, never answering his question. *Id.* That did not put Ewing on notice that he faced the revocation of his probation in addition to the revocation of work release.

The State also points to the plea hearing at which Ewing pleaded guilty to the failure to return charge and a misdemeanor false informing charge. There the judge advised Ewing that if "these crimes were committed while [he was] on probation, parole or serving a prison or . . . any sentence, the sentence for these crimes cannot begin until the others have ended," and "[t]hese are called consecutive sentences*." Id*. at 19–20. Ewing responded that he understood.

Then the judge warned, "Do you understand that a violation during any portion of your sentence *on that probation* may result in your entire sentence being revoked and ordered executed at the" Department of Correction? *Id*. at 20 (emphasis added). Ewing responded, "Yes." *Id.* But Ewing was on *work release*, not probation, when he failed to return, so the judge's warning did not preview for Ewing that the court was considering revoking his probation on the pending petition to revoke work release.

Lastly, the State points out that the trial court rejected a plea agreement to resolve Ewing's new charges because that agreement called for suspending a portion of his sentence to probation, and Ewing had just failed to comply with the conditions for the more restrictive work release program. That further proves Ewing's point. Even though he broke the rules of work release, the State still wanted to put him on probation for one of his new criminal charges. Seeking probation for a new charge

suggested the State was *not* necessarily seeking to revoke his probation for the previous conviction.

Avoiding this sort of notice problem is not difficult. For example, if a prosecutor wishes to seek sanctions beyond those that community corrections requests in its petition, the prosecutor can file a second petition identifying the additional sanctions the prosecutor seeks, and the trial court can hear both petitions together at a final hearing. But because here the only revocation petition sought to revoke only work release, we hold that the trial court erred by revoking Ewing's probation too.

## Conclusion

For these reasons, we reverse the revocation of Ewing's probation.

Rush, C.J., and Goff, J., concur.
Slaughter, J., dissents with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT
Matthew J. McGovern
McGovern Law Office
Fishers, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Supervising Deputy Attorney General

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana

**Slaughter, J., dissenting.**

The Court reinstates probation for defendant, Lamenski Ewing, who violated the terms of his probation when he absconded from his work-release program for seven months before he was eventually re-arrested. The Court holds that the trial court should not have revoked Ewing's probation because he did not know the State was seeking that sanction against him. In fact, Ewing had *actual* knowledge—and his plea agreement said in writing—that "any violation" of his probation "will result in revocation" of probation and "execution of" his sentence. And that is exactly what the trial court did here: It revoked Ewing's probation and ordered him to serve the rest of his sentence with the department of correction. Yet the Court holds this disposition was illegal because the State's petition sought only to revoke his placement in the work-release program and not his probation. I respectfully dissent.

### A

Ewing went missing from his work-release program in August 2023. A few days later, his community-corrections case manager concluded that Ewing was AWOL, absent without leave. The State, acting through the case manager, petitioned the trial court to revoke his work release. Ewing was re-arrested in March 2024. He admitted violating the terms of his work release and pleaded guilty to failure to return to the work-release facility, a Level 6 felony. The trial court imposed a one-year executed sentence, and it revoked Ewing's community-corrections placement and his probation.

### B

Like all criminal defendants, probationers have certain due-process rights, *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), one of which is the right to receive "written notice of the claimed violations" before a court revokes their probation. *Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992). Notice must be sufficient to allow the defendant to prepare an adequate defense against the charged violations. *Bovie v. State*, 760 N.E.2d 1195, 1199 (Ind. Ct. App. 2002).

Ewing did not contest that he failed to return to work release *or* that his failure to return broke work-release rules *or* that breaking work-release rules violated the terms of his probation. Yet the Court finds a due-process violation because the State's petition sought to revoke only his work release and did not mention revoking his probation. There is no dispute that Ewing had actual knowledge from statutory law, Ind. Code § 35-38-2.6-5(a), that the revocation of probation was a *possible* outcome for violating probation. And he had actual knowledge from his plea agreement that the revocation of probation was a *certain* ("will result") outcome for violating probation. Thus, he had actual knowledge of both the violation and the consequences. Due process required nothing more.

The Court holds otherwise, concluding that the probationer must receive "actual notice" of the State's requested sanction within the revocation petition itself or through the trial court's advisement at the initial hearing. *Ante*, at 6–9 (Part I.B). Our case law does not compel today's limitation on "actual notice". Indeed, we specifically rejected requiring "actual notice" in the revocation petition in *Braxton v. State*, 651 N.E.2d 268 (Ind. 1995). There, we held the probationer had adequate notice when the trial court warned at the initial hearing that her probation could be revoked due to her conduct, though the petition said nothing about that sanction. *Id.* at 270. Critically, *Braxton* neither defined "actual notice" nor set the minimum notice required to meet due process. It simply noted in dictum that "we might very well have concluded" that notice would have been insufficient without the trial court's advisement at the hearing. *Ibid.* The Court ignores *Braxton*'s holding and overstates *Braxton*'s implications here.

Nor do the three appellate cases on which the Court relies compel today's holding. *Ante*, at 9 (citing *Wright v. State*, No. 24A-CR-1 (Ind. Ct. App. June 11, 2024) (mem.); *McCauley v. State*, 22 N.E.3d 743 (Ind. Ct. App. 2014); *Patterson v. State*, 750 N.E.2d 879 (Ind. Ct. App. 2001)). All three cases held that the defendant had sufficient notice that his probation could be revoked. And none precluded using a probationer's knowledge of the potential sanction, outside of what is contained in the revocation petition, as evidence of "actual notice". Thus, the Court creates an arbitrary rule that looks only to the petition and the trial court's comments during the

revocation hearing to determine if Ewing had actual notice of the sanction but disregards the notice provided by both the applicable statute and the plea agreement.

The Court also tries to justify its decision by noting that Ewing's plea agreement—specifying that "any violation" of probation "will result in [its] revocation"—is insufficient because the agreement is not, in the Court's words, "self-enforcing". *Ante*, at 11. True, the agreement is not self-enforcing. But that just means the consequences of violating probation do not occur automatically. They require the State to take the additional, affirmative step of filing a petition advising Ewing of the charges giving rise to his probation violation. The State, through the community-corrections case manager, did just that. Its petition notified him of how he violated probation. And his plea agreement, along with the governing statute, notified him of the implications. Together, these things fulfilled all that due process requires.

To be sure, the better practice would have been for the State's petition to specify the entirety of relief it was seeking against Ewing, including probation. Alternatively, as the Court notes, the State could have filed a second petition alongside the case manager's petition. *Ante*, at 13. But due process, as the Court's own authorities show, does not require the State to integrate all notice into one or more petitions to revoke. Until today, neither did our precedent.

I respectfully dissent.


Massa, J., joins.